

# IN THE COURT OF CRIMINAL APPEALS
# OF TEXAS

---

### NO. PD-1113-07

---

**CARLOS RIVAS, Appellant**

**v.**

**THE STATE OF TEXAS**

---

### On Discretionary Review of Case 04-06-00375-CR of the
### Fourth Court of Appeals,
### Bexar County

---

*WOMACK, J., delivered the opinion for a unanimous Court.*

I.

The issue in this case is whether the appellant's objections to the State's evidence were sufficient to preserve the trial court's rulings for appeal.

A lucid statement of the requirements for objections was made in this court's opinion in *Lankston v. State*, 827 S.W.2d 907, 908–09 (1992).

> Our system of justice is characteristically adversarial. One consequence is that many substantive and procedural features, especially most evidentiary rules, are really optional with the parties. Although we may speak of evidence as inadmissible, it is more precise, if not more correct, to say that the rules make

such evidence objectionable. Indeed, this is just another way of calling attention to the fact that no issue concerning the admissibility of evidence ever arises unless one of the parties objects to it.

It follows that the trial judge's role in the admission and exclusion of evidence is generally not called into play unless a dispute develops between the parties concerning the proper application of an evidentiary rule. And because, absent any such dispute, our system generally expects him not to interfere with the presentation of evidence, it likewise does not fault him for refusing to interfere when a party fails to make the basis for his objection known. Beyond this, there are no technical considerations or form of words to be used. Straightforward communication in plain English will always suffice.

The standards of procedural default, therefore, are not to be implemented by splitting hairs in the appellate courts. As regards specificity, all a party has to do to avoid the forfeiture of a complaint on appeal is to let the trial judge know what he wants, why he thinks himself entitled to it, and to do so clearly enough for the judge to understand him at a time when the trial court is in a proper position to do something about it. Of course, when it seems from context that a party failed effectively to communicate his desire, then reviewing courts should not hesitate to hold that appellate complaints arising from the event have been lost. But otherwise, they should reach the merits of those complaints without requiring that the parties read some special script to make their wishes known.

We keep these principles in mind as we turn to the case before us.

## II.  Trial Proceedings

The trial was on five counts of aggravated sexual assault of a child and one count of indecency with a child by contact.

In July 2003, the seven-year-old child was examined by Annette Santos, a Sexual Assault Nurse Examiner at the Alamo Children's Advocacy Center in San Antonio, following an investigation by Child Protective Services and the San Antonio Police Department. The examination consisted of three parts: (1) a history obtained from the child, (2) a head-to-toe physical examination of the child, and (3) an examination of the child's genitals and anus. All of the physical examinations resulted in normal findings. Santos's written report of the history is the evidence in question for this appeal.

The history section of the report contained the child's descriptions of more incidents of sexual assault, and greater detail, than she testified to in court. The child reported that she was seven when the appellant came into her room on many occasions. She said "it" happened "lots" of times in his room, in her room, and in the living room, and that the appellant told her that she couldn't tell anyone about what happened, or "me and mommy wouldn't be together." She reported that "it" hurt and that it made her sad because she didn't like it. She reported that the appellant licked her "front private" and "back private" and would make her lick "his private," and that if she did not, he would be "really mean" to her mother and to her. According to the medical history, the appellant penetrated the child's vagina with his finger and anally penetrated her with his penis. The victim also reported that the appellant's semen dripped over her torso by saying, "the white stuff would come out of his private on me (motions hands over chest and stomach areas)."

At the beginning of the trial, the District Court granted the appellant's three motions in limine which ordered the State not to mention or allude to a total of seven matters in the presence of the jury until a hearing had been "held outside the presence of the jury and prior to the Court's determination of relevancy as specified in th[ese] motion[s]."

Two of the matters were:

1. "all testimony which constitutes impermissible bolstering *Black*, 634 SW 2nd @ 358," (*sic*) and

2. "in the absence of physical evidence of sexual abuse, any expert testimony concerning the diagnosis of sexual abuse based solely on the self reported medical history of the complainant. *Salinas v. State*, 166 SW 3d 368, 369."

The appellant raised these two matters when the State called Santos in its case-in-chief. In the "history" portion of her report, she had written down what the child told her, verbatim, in quotation marks. She also jotted down, in parentheses, things the child was doing as she talked.

Outside the presence of the jury, the appellant made ten objections (to which we have added some underlining and from which we have omitted counsels' repeated uses of "Your Honor" and "Judge" in addressing the Court):

*First objection.* "Well, we are going to ask … what she's expected to testify to regarding our Motion in Limine. They are going to claim it's a medical exception. We are going to claim absent – even with the medical exception, in the absence of physical [evidence], they're not allowed to testify." (Emphasis added.)

*Second objection.* After the State told the court what the witness's testimony would be ("Ms. Santos … took a history, she did a head-to-toe, and she did a genital exam. And that's the basis of her testimony"), the appellant objected further: "Any statement that the child may have made in her examination for purposes of whether or not it is or is not the presence of sexual abuse constitutes impermissible bolstering of this child subject to a showing of impeachment." (Emphasis added.)

The court asked for, and the appellant provided, copies of two appellate opinions to support his objections.

The State argued that the medical history was admissible hearsay pursuant to the exception for declarations made for medical diagnosis and treatment.[1] It said that the appellant's

---

[1] *See* R. EVID. 803 ("The following are not excluded by the hearsay rule, even though the declarant is available as a witness: … (4) Statements made for purposes of medical diagnosis or treatment and describing medical history, or past or present symptoms, pain, or sensations, or the inception or general character of the cause

precedents were not on point; one of them had to do with the admissibility of a medical witness's conclusion as to whether the child was sexually abused, and the other with a witness's conclusion as to whether the child was fantasizing. The State said it would not ask Santos about either of those matters.

*Third objection.* The appellant replied, "However that's not the principle. The principle is, in the absence of physical evidence of abuse, a statement or opinion whether a child has been physically abused or not, and all of the other information, constitutes impermissible bolstering of the child's testimony." (Emphasis added.)

The court said, and the witness confirmed, that the witness would not testify that the child was telling the truth.

*Fourth objection.* The appellant then said, "Well, then let's demonstrate where the child has been impeached for the purposes of her allowing them to read in her previous statement."

The court asked, "What are you talking about now?"

*Fifth objection.* The appellant replied, "Well, that's what she's going to do. She's going to read all her comments about what the child told her and what she did, et cetera, ultimately lead to a diagnosis or conclusion of sexual assault or not. They are back-dooring that very case."

The court overruled that objection.

*Sixth objection.* The appellant said, "For purposes of the examination, if you examine the document, there is a conclusory statement in there concerning sexual abuse. It's a back door. You cannot do it."

---

or external source thereof insofar as reasonably pertinent to diagnosis or treatment").

When the State pointed out that the report said the examination was "normal" and contained no conclusion that sexual abuse had occurred, the appellant replied, "It doesn't disallow it either. So it's a bolstering of sexual abuse by a physician and a medical person."

The court overruled that objection.

*Seventh objection.* The appellant presented another appellate opinion, which the State distinguished on the ground that it involved a diagnosis, which the State would not ask for in this case.

The appellant replied, "That is a back door."

The court said, "Pardon me?"

The appellant replied, "See, in that particular case, there was a confirmation because it was consistent. We see that every day. In this particular case, they are going to run the little girl's testimony in as to what she said happened, bolstering her credibility, bolstering her testimony, and she hasn't been impeached. For that I would object because that is improper bolstering."

*Eighth objection.* Santos told the jury more about her training and experience, she identified her written report, and she testified that her examination was performed for medical purposes.

When the State offered the report, the appellant objected "for the reasons previously stated regarding cases that are presented, and in the Motion in Limine, which directly state it constitutes impermissible bolstering, constitutes hearsay, and more importantly in this particular case contains statements that may or may not have been made entirely by the child as it pertains to certain observations, and contains comments by the child and it's impermissible bolstering and

hearsay as it pertains to the allegation. Under 404 and 403 its prejudicial value certainly outweighs its probative value, considering the fact that we had a child here who has testified."

The court overruled the objection and admitted the report.

*Ninth objection.* When the State asked Santos to read from the report what the child had told her, the appellant gave the court an appellate opinion "that says unless you impeach her, you can't bring it in, and she has not been impeached. … They can't read her own testimony. It is bolstering."

The court overruled the objection.

The appellant said he was "going to renew my objection every time and to every line."

The court said, "That's fine."

*Tenth objection.* After a few more questions about the method of making the report, the State asked Santos to read the history to the jury. The appellant said, "I object to the form. I object to the contents. I object that it's impermissible bolstering for the reasons the cases cited. Most importantly, 403 versus 402, prejudicial value outweighs the probative value for the offense as charged – as charged, and I would like a running objection to every line."

The court granted a running objection, but did not otherwise rule.

Santos read the history portion of the report to the jury.

The jury found the appellant guilty of four counts of aggravated sexual assault and of the indecency with a child count. It assessed punishments of twenty-five years' confinement and a $2,000 fine on each count of aggravated sexual assault, and twelve years' confinement and a $2,000 fine for indecency with a child.

### III.  Court of Appeals

On appeal, the appellant's first point of error was that "the evidence constituted improper bolstering of the complainant's testimony." He argued (Brief at 17-18, emphasis added):

> Bolstering occurs "when one item of evidence is improperly used by a party to add credence or weight to some earlier unimpeached piece of evidence offered by the same party." *Cohn v. State*, 849 S.W.2d 817, 819 (Tex. Crim. App. 1993) (quoting *Sledge v. State*, 686 S.W.2d 127, 129 (Tex. Crim. App. 1984)).
>
> When a sexual abuse examination is at issue, and there is no physical evidence of abuse, the testimony of the sexual assault examiner "can only be seen as an attempt to directly bolster the credibility of the complainant and a direct comment on the complainant's truthfulness." *Salinas v. State*, 166 S.W.3d 368, 371 (Tex. App. – Fort Worth 2005, pet. ref'd).
>
> The line of questions to Annette Santos regarding C.C.'s declarations during the SANE exam was improper bolstering. No aspect of C.C.'s declarations had been impeached prior to the State's questions, and her declarations in the SANE examination were consistent with her prior testimony – if more detailed and complete. The questions in the report "underlined" the child's credibility to the jury, to the extent that this evidence covered items about which she had already testified. … The court abused its discretion when it overruled the objection.

The Court of Appeals overruled the point of error, saying:

> A general objection to "bolstering," however, is not sufficient to preserve error, because it does not sufficiently inform the trial court of the nature of the objection. *In re J.G.*, 195 S.W.3d 161, 183 (Tex. App.–San Antonio 2006, no pet.). Before the adoption of the Rules of Evidence, "bolstering" was a proper objection when one item of evidence was used by a party to add credence or weight to some earlier unimpeached evidence that the same party had offered. … *Montoya v. State*, 43 S.W.3d 568, 573 n.2 (Tex. App.–Waco 2001, no pet.). "Under case law existing prior to the promulgation of the Rules of Evidence, bolstering an unimpeached witness was 'automatically' error." *Montoya*, 43 S.W.3d at 573 n.2. However, although the Texas Rules of Evidence incorporate some concepts from "bolstering" in Rules 613(c) and 608(a), the Rules do not contain a specific rule pertaining to or prohibiting "bolstering." *See id.* Indeed, "nothing in the Rules prevents a party from adding credence to an unimpeached witness or adding credence to other evidence as long as that additional evidence is relevant." *Id.* "In fact, the Rules favor admissibility." *Id.* (citing TEX. R. EVID. 402, 403). "Given the focus of the Rules favoring admission, as well as the lack of a specific prohibition of this type of evidence, an objection that certain evidence is 'bolstering' in

no way invokes the Rules or informs the trial court of the basis for exclusion under the Rules." *Id.* As such, a party's objection must inform the trial court why or on what basis the otherwise admissible evidence should be excluded. *Id.*; *see also Cohn v. State*, 849 S.W.2d 817, 819-21 (Tex. Crim. App. 1993). Here, at trial, Rivas did not identify which Rule of Evidence, if any, was violated by the admission of the nurse's report. As such, he failed to preserve his objection for appeal.[2]

## IV.  Discussion

### A.  "Bolstering"

The law of "bolstering" existed before this state's Rules of Evidence were adopted.[3] At one time, this term of art conveyed an objection that was uniformly recognized by the courts.[4] As the law evolved, however, most of our evidentiary terms became codified, first in the Texas Rules of Criminal Evidence in 1985, and finally in the unified Texas Rules of Evidence, promulgated in 1998. While the term "bolstering" is slowly dying as an objection on its face, it has not yet expired, despite the fact that the term itself failed to survive the adoption of the Rules. Its continued lifeline is evidenced by the application of "bolstering" objections at trials in many districts in Texas.[5]

---

[2] *Rivas v. State*, slip op. at 6, 2007 Tex. App. LEXIS 4395, at 8–9 (Tex. App.–San Antonio 2007) (not designated for publication).

[3] *Pless v. State,* 576 S.W.2d 83, 84 (Tex. Cr. App. 1978) ("'Bolstering' occurs when one item of evidence is improperly used by a party to add credence or weight to some earlier unimpeached piece of evidence offered by the same party."); *see also Sledge v. State,* 686 S.W.2d 127, 129 (Tex. Cr. App. 1984).

[4] *Id.*

[5] *See generally Cohn*, 849 S.W.2d, at 818; *Rousseau,* 855 S.W.2d, at 681; *Zachary v. State*, 2008 Tex. App. LEXIS 7218 (Tex. App.–Houston 2008); *Reyes v. State*, 2008 Tex. App. LEXIS 5921 (Tex. App.–San Antonio 2008)*; In re J.G.*, 195 S.W.3d, at 183; *Garza v. State*, 2007 Tex. App. LEXIS 7194 (Tex. App.–Corpus Christi 2007); *Davidson v. State*, 2006 Tex. App. LEXIS 9178 (Tex. App.–Dallas 2006); *Hatter v. State*, 2006 Tex. App. LEXIS 4516 (Tex. App–Austin  2006); *Montoya*, 43 S.W.3d, at, 573.

A fundamental problem with an objection to "bolstering" is its inherent ambiguity. "Bolstering" appears to have roots in several evidentiary rules.[6] This court discussed "bolstering" in *Cohn v. State,* acknowledging the term as an objection that contained the substance of Rules 608(a) and Rule 612(c).[7] *Cohn* defined "bolstering" as "any evidence the *sole* purpose of which is to convince the factfinder that a particular witness or source of evidence is worthy of credit, without substantively contributing 'to make the existence of a fact that is of consequence to the determination of the action more or less probable than it would be without the evidence.'"[8] Thus, Rule 608(a), which allows opinion or reputation evidence as to the character of a party's own witness for truthfulness, but only after the witness's character for truthfulness has already been attacked by the opposing party,[9] appears to be encompassed by the generic "bolstering" objection.

Additionally, Rule 613(c), seems to be covered under the "bolstering" objection "to the extent it prevents the use of prior consistent statements of a witness for the sole purpose of enhancing his credibility."[10] Rule 613(c) makes inadmissible any prior consistent statement of a witness which is consistent with the testimony, except as provided by Rule 801(e)(1)(B).[11] This

---

[6] *See Cohn*, 849 S.W.2d, at 819-21.

[7] 849 S.W.2d, at 819-20. It should be noted that Rule 613(c) was previously Rule 612(c) at the time *Cohn* was delivered, since the Rules were again adopted in 1998, five years following the decision. *See also Rousseau,* 855 S.W.2d, at 681.

[8] *Cohn*, 849 S.W.2d, at 819-20 (emphasis in original).

[9] R. EVID. 608(a); *see also Cohn*, 849 S.W.2d, at 820.

[10] *Cohn,* 849 S.W.2d, at 820 (footnote 8).

[11] R. EVID. 613(c).

rule excludes prior consistent statements as substantive evidence, thus reiterating the principles of hearsay.[12]

Because of the multifarious origins of "bolstering," courts have found concern with it as an objection on its face. Many appellate courts have cited the *Cohn* concurrence as authority to abandon "bolstering" as a valid objection to preserve error for review.[13] "A party's objection must inform the trial court why or on what basis the otherwise admissible evidence should be excluded."[14] The Court of Appeals relied on this principle in the instant case when it held that "a general objection to 'bolstering' is not sufficient to preserve error, because it does not sufficiently inform the trial court of the nature of the objection."[15]

## B.  Objections More Specific than "Bolstering"

But the appellant's objections were not just general objections to "bolstering." We set out his objections at some length above. Several grounds other than "bolstering" were specified.

One was that the medical exception to the hearsay rule did not apply in the absence of physical evidence of abuse. This was specified in the appellant's first and third objections.

Another was that the evidence was inadmissible because the child had not been im-peached. This was specified in the second, fourth, seventh, and ninth objections.

Yet another was connected to an appellate opinion (or opinions) on which the appellant relied, which (he said) stood for the proposition that the child's statements would be used as a

---

[12] *See Cohn*, 849 S.W.2d, at 820.

[13] *In re J.G.,* 195 S.W.3d, at 183; *Montoya*, 43 S.W.3d, at 573.

[14] *Cohn,* 849 S.W.2d, at 821 (concurrence by Campbell).

[15] *Rivas,* 2007 Tex. App. LEXIS 4395, at 7-8; *see also In re J.G.,* 195 S.W.3d, at 183.

basis for the nurse's "back door" diagnosis or opinion that sexual abuse had occurred. This ground was made when he presented the opinions to the court and when he made his fifth, sixth, and tenth objections.

### C. Requirement to Identify a Rule of Evidence?

The Court of Appeals' statement that, because he "did not identify which Rule of Evidence, if any, was violated by the admission of the nurse's report … he failed to preserve his objection for appeal," is one with which we do not agree. As we said in *Lankston, supra*, "Straightforward communication in plain English will always suffice." Reference to a Rule may save an objection that might otherwise be obscure, but an objection is not defective merely because it does not identify a Rule of Evidence.

The issues were discussed by both attorneys, and rulings were made by the judge several times. The appellant fulfilled the requirements of Rule of Appellate Procedure 33.1, thus preserving this error for review.

### V.

We vacate the judgment of the Court of Appeals and remand the case to that court for further consideration.

Delivered January 28, 2009.
Publish.