**Affirmed and Opinion Filed January 30, 2023**



**In The**

**Court of Appeals**

**Fifth District of Texas at Dallas**

**No. 05-21-00633-CR**

**HILLARY BELLARD, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

**On Appeal from the 366th Judicial District Court**
**Collin County, Texas**
**Trial Court Cause No. 366-81098-2021**

## MEMORANDUM OPINION

Before Justices Nowell, Smith, and Miskel[1]
Opinion by Justice Miskel

Hillary Bellard appeals the trial court's judgment convicting him of

aggravated sexual assault of a child younger than fourteen years of age. A jury found

Bellard guilty and assessed his punishment at thirty-seven years of imprisonment.

Bellard raises five issues on appeal arguing three main points: (1) the evidence is

insufficient to support his conviction; (2) the trial court erred when it overruled his

objections to the State's expert witnesses; (3) the trial court erred when it overruled

---

[1] Justice Leslie Osborne was a member of the panel for this appeal but, after the case was submitted, she resigned from this Court. Justice Osborne did not participate in the decision of this case. TEX. R. APP. P. 41.1(b).

(a) his hearsay objection to the Sexual Assault Nurse Examiner (SANE) report, (b) his hearsay objection to the video recording of the forensic interview, and (c) his objection to the child victim's drawings under Texas Rule of Evidence 403 because their probative value was substantially outweighed by the danger of unfair prejudice.

We conclude the evidence is sufficient, the trial court did not abuse its discretion when it overruled Bellard's objections to the State's expert witnesses and, assuming without deciding that the trial court erred when it admitted the complained-of evidence, any error was harmless. The trial court's judgment is affirmed.

## I. FACTUAL AND PROCEDURAL BACKGROUND

S.R.'s parents married in 2013, but separated in September 2019. After their separation, S.R. lived with her mother at night and on weekends, and with her father the remainder of the time. S.R.'s mother lived in an apartment and several of her children, including S.R., would stay there. According to S.R., sometimes Bellard, who S.R. knew as "Red," would live there or visit.

However, S.R.'s mother had substance abuse problems. In January 2020, S.R.'s mother spent seven days in the Collin County jail and, at the end of the month, she went into a substance-abuse rehabilitation program for thirty days. As a result, S.R. began living with her father full time and it was during this time that he learned Bellard had been staying at S.R.'s mother's apartment. In February 2020, when she was six years old, S.R. told her father something that caused him to contact the police.

S.R. was taken to the Collin County Children's Advocacy Center where she spoke with a forensic interviewer. During that interview, S.R. made an outcry of sexual abuse, stating that Bellard had penetrated her private part with his finger. She stated that Bellard got a tiny bag containing a white substance that looked like salt, went to where she was lying on her bed, opened her legs, stuck his middle finger into the white substance, and put it into her private part. She told the forensic interviewer that Bellard's finger was moving and it felt like he was digging in her, it hurt, and when he removed his finger, he licked it. S.R. said that she had pain when she urinated afterwards. Also, during the interview, S.R. made some drawings with the forensic interviewer and on her own.

Detective Craven executed a search warrant of S.R.'s mother's apartment. He observed that the location matched S.R.'s description to the forensic interviewer. Also, the police seized small baggies containing a white substance believed to be cocaine that matched S.R.'s description.

A SANE nurse examined S.R. Her father provided the SANE nurse with a verbal history and a copy of the forensic interview that summarized what S.R. had disclosed. S.R. had a normal SANE exam.

Bellard was indicted for aggravated sexual assault of a child younger than fourteen years of age. The jury found Bellard guilty and assessed his punishment at thirty-seven years of imprisonment.

## II. EVIDENCE SUPPORTING THE CONVICTION

In issue one, Bellard argues: (a) the evidence is insufficient to support his conviction, and (b) there was a variance between the act alleged in the indictment and the proof offered at trial.

### A. Sufficiency of the Evidence

In the first part of issue one, Bellard contends the evidence was insufficient to support his conviction because S.R.'s outcry was confused and her testimony was conflicting. The State responds that any conflicts in the evidence raised a fact issue for the jury to resolve.

### 1. Standard of Review

Under the Due Process Clause, a criminal conviction must be based on legally sufficient evidence. *Harrell v. State*, 620 S.W.3d 910, 913 (Tex. Crim. App. 2021). When reviewing the sufficiency of the evidence, an appellate court considers all of the evidence in the light most favorable to the verdict to determine whether the jury was rationally justified in finding guilt beyond a reasonable doubt. *See Jackson v. Virginia*, 443 U.S. 307, 318–19 (1979); *Harrell*, 620 S.W.3d at 913–14. Further, an appellate court is required to defer to the jury's credibility and weight determinations because the jury is the sole judge of the witnesses' credibility and the weight assigned to their testimony. *See Jackson*, 443 U.S. at 319, 326; *Harrell*, 620 S.W.3d at 914. An appellate court will consider all evidence when reviewing the sufficiency of the evidence, whether direct or circumstantial, properly or improperly admitted,

or submitted by the prosecution or defense. *Jenkins v. State*, 493 S.W.3d 583, 599 (Tex. Crim. App. 2016).

## 2. Applicable Law

A person commits the offense of aggravated sexual assault if he intentionally or knowingly causes the penetration of the sexual organ of a child by any means and the child was younger than fourteen years of age. *See* TEX. PEN. CODE ANN. § 22.021(a)(1)(B)(i), (a)(2)(B), (f)(2). The testimony of a child victim alone is sufficient to support a conviction for aggravated sexual assault of a child. *See* TEX. CODE CRIM. PROC. ANN. art. 38.07; *Lee v. State*, 186 S.W.3d 649, 655 (Tex. App.—Dallas 2006, pet. ref'd).

## 3. The Evidence was Sufficient to Support Conviction

Bellard claims the evidence is insufficient because S.R.'s outcry was confused or unclear and she gave conflicting and inconsistent testimony at trial. These arguments go to the jury's assessment of the weight and credibility of the evidence. We are required to defer to the jury's credibility and weight determinations because the jury is the sole judge of S.R.'s and the other witnesses' credibility, and the weight to be given to their testimony. *See Jackson*, 443 U.S. at 319, 326; *Harrell*, 620 S.W.3d at 914. Further, the testimony of S.R., a child victim, alone is sufficient to support a conviction for aggravated sexual assault. *See* CRIM. PROC. art. 38.07(a)1; *Lee*, 186 S.W.3d at 655. Accordingly, we conclude the evidence was sufficient to support Bellard's conviction.

The first part of issue one is decided against Bellard.

## *B.  Variance*

In the second part of issue one, Bellard raises as a subsidiary argument his contention that S.R.'s testimony created a fatal variance between the act alleged in the indictment and the proof offered at trial.  He complains that the State alleged penetration by "defendant's finger," but the testimony about how penetration occurred was unclear and, as a result, the evidence was insufficient due to a material variance between the indictment allegations and the proof.  The State responds that the jury heard sufficient evidence to find that the defendant penetrated S.R. with his finger, and there was no variance.

### 1.  Standard of Review

In cases involving sufficiency claims based on a variance between the indictment and the evidence, rather than reviewing the evidence based under the traditional sufficiency standards, appellate courts consider the materiality of the variance.  *See Fuller v. State*, 73 S.W.3d 250, 253 (Tex. Crim. App. 2002).  The bottom line is that, in a sufficiency review, appellate courts will tolerate non-statutory variances as long as they are not so great that the proof at trial "shows an entirely different offense" than what was alleged in the charging instrument. *Johnson v. State*, 364 S.W.3d 292, 295 (Tex. Crim. App. 2012) (discussing non-statutory variances which are subject to materiality analysis); *see also*

*Ramjattansingh v. State*, 548 S.W.3d 540, 547 (Tex. Crim. App. 2018) (discussing statutory variances which are always material).

## 2. Applicable Law

Variances are mistakes of one sort or another. *Byrd v. State*, 336 S.W.3d 242, 246 (Tex. Crim. App. 2011). A "variance" occurs when "there is a discrepancy between the allegations in the charging instrument and the proof at trial." *See, e.g., id.*; *Gollihar v. State*, 46 S.W.3d 243, 246 (Tex. Crim. App. 2001). In a variance situation, the State has proven the defendant guilty of a crime, but has proven its commission in a manner that varies from the allegations in the charging instrument. Gollihar, 46 S.W.3d at 246.

Only a "material" variance, one that prejudices a defendant's substantial rights, will render the evidence insufficient. *E.g., Ramjattansingh*, 548 S.W.3d at 547; *Gollihar*, 46 S.W.3d at 257; *see also* TEX. R. APP. P. 44.2(b) ("Any other error, defect, irregularity, or variance that does not affect substantial rights must be disregarded."). A variance is material if it: (1) deprived the defendant of sufficient notice of the charges against him; or (2) would subject him to the risk of being prosecuted twice for the same crime. *E.g., Ramjattansingh*, 548 S.W.3d at 547; *Fuller*, 73 S.W.3d at 253; *Gollihar*, 46 S.W.3d at 257. The burden of demonstrating the materiality of a variance rests with the defendant. *Santana v. State*, 59 S.W.3d 187, 194 (Tex. Crim. App. 2001).

### 3.  No Material Variance Between Indictment and Proof at Trial

Bellard argues there was a material variance because the evidence proved a different manner and means—penetration with a baggie—than the manner and means alleged in the indictment—penetration by his finger.  He also contends the variance was material because it could subject him to the risk of being prosecuted twice for the same offense. [2]  Bellard claims that, if the jury had acquitted him, the State could have indicted him for aggravated sexual assault under the alternate theory that penetration was by means of a bag of powder.

A person commits the offense of aggravated sexual assault if he intentionally or knowingly causes the penetration of the sexual organ of a child by any means and the child was younger than fourteen years of age.  *See* PEN. § 22.021(a)(1)(B)(i), (a)(2)(B), (f)(2).  The indictment alleged that Bellard "intentionally and knowingly cause[d] the penetration of the female sexual organ of [S.R.], a child younger than fourteen (14) years of age, by means of [Bellard's] finger."  These allegations were incorporated into the jury charge.

At trial, S.R. testified that Bellard penetrated her with his finger.  However, the forensic interviewer and S.R. both acknowledged that, during her forensic interview, S.R. had also stated Bellard penetrated her with a baggie.  But the forensic interviewer further testified that, although she had difficulty clarifying the means of

---

[2] Bellard makes no argument that the alleged variance was material because he lacked notice of the charges against him such that he was unable to prepare a defense.

penetration, through the use of gestures S.R. ultimately conveyed that Bellard used his finger to penetrate her. We cannot expect child victims to testify with the same clarity and ability as is expected of mature and capable adults. *See Villalon v. State*, 791 S.W.2d 130, 134 (Tex. Crim. App. 1990). The proof at trial showed that Bellard penetrated S.R.'s female sexual organ with his finger as alleged in the indictment.

We further conclude that any alleged variance in this case is not material and does not render the evidence insufficient to support Bellard's conviction. Bellard has not met his burden of demonstrating the materiality of the alleged variance. *See Santana*, 59 S.W.3d at 194 (defendant has burden of demonstrating material variance).

The second part of issue one is decided against Bellard.

### III. EXPERT WITNESSES

In issue two, Bellard argues the trial court erred when it overruled his objections to the following expert witnesses under Texas Rule of Evidence 702: (1) Detective Craven; (2) the SANE nurse; and (3) the forensic interviewer.

### A. Standard of Review

An appellate court reviews a trial court's decision to admit expert testimony for an abuse of discretion. *Rhomer v. State*, 569 S.W.3d 664, 669 (Tex. Crim. App. 2019). A trial court abuses its discretion when it acts without reference to any guiding rules and principles or acts arbitrarily or unreasonably. *Id.*

### B. Applicable Law

Texas Rule of Evidence 702 provides that if scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education may testify thereto in the form of an opinion or otherwise. TEX. R. EVID. 702. In accordance with Rule 702, expert testimony is admissible if: (1) the expert is qualified; (2) the subject matter of the testimony is based on a reliable foundation and appropriate for expert testimony; and (3) the testimony is relevant. *See Wells v. State*, 611 S.W.3d 396, 426 (Tex. Crim. App. 2020).

Qualification is distinct and should be evaluated independently from reliability and relevance. *Vela v. State*, 209 S.W.3d 128, 131 (Tex. Crim. App. 2006). To determine whether a trial court has abused its discretion in ruling on an expert's qualifications, an appellate court may consider three questions: (1) Is the field of expertise complex?; (2) How conclusive is the expert's opinion?; and (3) How central is the area of expertise to the resolution of the lawsuit? *Rhomer*, 569 S.W.3d at 669–70. Greater qualifications are required for more complex fields of expertise and for more conclusive and dispositive opinions. *Id.* At 670.

Because a witness will not always qualify as an expert merely by virtue of a general background, qualification involves a two-step inquiry: (1) an expert witness must have a sufficient background in a particular field; and (2) a trial court must also

determine whether that background goes to the very matter on which the expert witness is giving an opinion. *Rhomer*, 569 S.W.3d at 669; *Vela*, 209 S.W.3d at 131. The specialized knowledge that qualifies a witness to offer an expert opinion may be derived from specialized education, practical experience, a study of technical works, or a combination of these things. *Rhomer*, 569 S.W.3d at 669. In other words, the expert's background must be tailored to the area of expertise covered by the expert's intended testimony. *Id.* The party offering the expert testimony has the burden to show the expert is qualified on the matter in question. *Id.*

### C. The Admission of Expert Testimony was not Improper

### 1. The Detective

In the first part of issue two, Bellard argues the trial court erred when it overruled his objections to Detective Craven's testimony under Rule 702 because: (1) he was not qualified to testify as an expert witness as he lacked sufficient experience to offer opinions on matters such as delayed outcries, lack of physical evidence, and consistency of statements; and (2) his testimony was improper bolstering. The State responds that the trial court had sufficient information to conclude Detective Craven possessed the requisite qualifications to testify as an expert.

The trial court held a Rule 702 pretrial hearing to determine whether Detective Craven qualified as an expert witness on child abuse investigations and the types of issues that are commonly seen in those types of investigations. Detective Craven

–11–

testified that he has an undergraduate degree in criminal justice administration and, at the time of the hearing, he had been a police officer for thirteen years, including almost two years as a detective in the youth crimes unit. And he was currently a training officer. As a police officer, Detective Craven attended basic investigator school, warrant writing schools, and interview schools. In addition, he received quarterly ongoing crimes-against-children training that covered topics such as abuse patterns, identifying whether a victim had been coached (e.g., body language and use of age-inappropriate language), and different types of outcries, including delayed outcries. He also had on-the-job training, including the observation of forensic interviews. While in the youth crimes unit, he investigated offenses involving juvenile victims or suspects, including offenses ranging in severity from injury to a child to aggravated sexual assault of a child. Detective Craven estimated that he had handled more than a hundred sexual abuse cases while in the youth crimes unit.

Bellard objected on the basis that: (1) Detective Craven was not qualified; and (2) his testimony as an expert would amount to improper bolstering. Bellard did not argue Detective Craven's scientific, technical, or other specialized knowledge was unreliable or his expert testimony was irrelevant. The trial court expressly ruled that Detective Craven was qualified to testify as an expert and impliedly overruled Bellard's objection to improper bolstering.

First, we address Bellard's argument that Detective Craven was not qualified to testify as an expert. The record shows that Detective Craven's specialized

knowledge was derived from his specialized education and practical experience. *See Rhomer*, 569 S.W.3d at 669 (specialized knowledge that qualifies witness to offer expert opinion may be derived from specialized education, practical experience, study of technical works, or combination of these things). Also, Detective Craven's background was tailored to the area of expertise covered by his intended testimony, i.e., child abuse investigations and the types of issues that are commonly seen in those types of investigations. *Id.* Accordingly, we conclude the trial court did not abuse its discretion when it ruled Detective Craven was qualified to testify as an expert.

Next, we address Bellard's argument that the trial court erred when it overruled his pretrial objection to Detective Craven's expert testimony as to delayed outcries, signs that a child is coached, "red flags," and his failure to observe any "red flags" because it amounted to improper bolstering. In particular, Bellard points to Detective Craven's trial testimony that he did not "suspect that anything was false" in S.R.'s interview.[3] But when that statement is read in context, it is apparent that it was made in the course of discussing the absence of "red flags." Also, we note that Bellard did not object to this statement during the trial. *See* TEX. R. APP. P. 33.1.

---

[3] Bellard also points to Detective Craven's statement that the physical evidence seized at the mother's apartment corroborated S.R.'s testimony, i.e., "it's just another thing that is proving to us what happened," was improper bolstering. However, the record shows that Bellard did not preserve this argument because he did not object to this testimony at trial. *See* TEX. R. APP. P. 33.1.

While an expert's testimony that a child witness is truthful is inadmissible under Texas Rule of Evidence 702, an expert's opinion on signs of coaching or manipulation may assist the trier of fact and may therefore be admissible. *See Schutz v. State*, 957 S.W.2d 52, 73 (Tex. Crim. App. 1997) ("We hold that [the expert's] testimony that the complainant did not exhibit the traits of manipulation did not constitute a direct comment upon the truth of the complainant's allegations."). Without deciding whether "bolstering" remains a proper objection under the rules of evidence, we cannot agree that Detective Craven's testimony as an expert was improper bolstering.[4]

The first part of issue two is decided against Bellard.

---

[4] "Bolstering" is evidence offered for the "sole purpose" of enhancing the credibility of a witness or source of evidence without substantively contributing to relevance. *Rivas v. State*, 275 S.W.3d 880, 886 (Tex. Crim. App. 2009) (citing *Cohn v. State*, 849 S.W.2d 817, 819–20 (Tex. Crim. App. 1993) (quoting former version of Texas Rule of Evidence 401)). It is a term lawyers used before the codification of the Texas Rules of Evidence. *Rivas*, 275 S.W.3d at 886. The Texas Court of Criminal Appeals has recognized that, as a result of the codification of evidentiary rules in the Texas Rules of Evidence, "the term 'bolstering' is slowly dying as an objection on its face" but "it has not yet expired, despite the fact that the term itself failed to survive the adoption of the Rules." *Id.* The Court noted, "[i]ts continued lifeline is evidenced by the application of 'bolstering' objections at trials in many districts in Texas." *Id.* But the Court did not identify the extent to which the objection survives, although it did indicate that a "fundamental problem with an objection to 'bolstering' is its inherent ambiguity." *Id.* In an unpublished opinion, this Court has held that a bolstering objection was insufficient to preserve error because bolstering per se is no longer prohibited under the rules. *Carter v. State*, No. 05-91-01667-CR, 1994 WL 416694, at *4 (Tex. App.—Dallas Aug. 11, 1994, no pet.) (not designated for publication); *see also Trevino v. State*, No. 13-11-00709-CR, 2013 WL 3518200, at *4 (Tex. App.—Corpus Christi-Edinburg July 11, 2013, pet. ref'd) (mem. op., not designated for publication). And, in a concurring opinion, a justice on this Court again raised by analogy the question of whether a "bolstering" objection is sufficient to preserve error for appellate review. *Coker v. State*, No. 05-17-00782-CR, 2019 WL 3406629, at *6 (Tex. App.—July 29, 2019, not pet.) (mem. op., not designated for publication) (Schenck, J., concurring).

## 2. The SANE Nurse

In the second part of issue two, Bellard argues the trial court erred when it overruled his objections to the SANE nurse's expert testimony because: (1) her testimony was not relevant, although he concedes that she was qualified to testify as an expert; and (2) improper bolstering. The State responds that the SANE nurse's testimony was relevant because it provided specialized knowledge that was helpful to the jury's understanding of the evidence and to its determination of the facts.

During the trial, the trial court held a Rule 702 hearing outside the presence of the jury to determine whether the SANE nurse could testify as an expert witness. Bellard objected on the basis that: (1) the SANE nurse was not qualified; (2) the subject matter of her testimony was not based on a reliable foundation because she was not "peer reviewed"; and (3) her testimony amounted to improper bolstering. The trial court expressly ruled that the SANE nurse was qualified to testify as an expert and impliedly overruled Bellard's objections to the reliability of her testimony and improper bolstering.

First, we address Bellard's argument that the SANE nurse's expert testimony was irrelevant. An appellate court may not address the merits of an issue that has not been preserved for appeal. *See Ford v. State*, 305 S.W.3d 530, 532 (Tex. Crim. App. 2009). To preserve error for appellate review, the complaining party must make a timely, specific objection and obtain a ruling on the objection. *See* TEX. R. APP. P. 33.1. An objection stating one legal theory may not be used to support a

–15–

different legal theory on appeal. *See Dixon v. State*, 2 SW.3d 263, 273 (Tex. Crim. App. 1998) (op. on reh'g); *Broxton v. State*, 909 S.W.2d 912, 918 (Tex. Crim. App. 1995). The record shows that Bellard did not object to the SANE nurse's expert testimony on the basis that it was irrelevant. Accordingly, we conclude Bellard did not preserve this argument for appellate review because his complaint on appeal does not comport with his trial objection. *See* TEX. R. APP. P. 33.1.

Next, we address Bellard's argument that the trial court erred when it overruled his objection that the SANE nurse's expert testimony was improper bolstering of S.R.'s and Detective Craven's testimony. Bellard contends that the SANE nurse's testimony repeated S.R.'s outcry. And he points to the SANE nurse's trial testimony that it is "normal" that a child may disclose sexual abuse and have a normal SANE examination, which he contends bolstered Detective Craven's testimony that he scheduled a SANE exam for S.R. because it was policy, not because he expected an injury to be found. But the SANE nurse's testimony did not bolster their testimony, because she affirmatively stated that it was not her job to determine whether or not a child was abused. Further, although Bellard objected to bolstering during the Rule 702 hearing, we note that he did not raise this objection to the SANE nurse's testimony during the trial. *See* TEX. R. APP. P. 33.1. Nevertheless, without deciding whether bolstering remains a proper objection under

the rules of evidence, we conclude the trial court's ruling was in the zone of reasonable disagreement.[5]

The second part of issue two is decided against Bellard.

### 3. The Forensic Interviewer

In the third part of issue two, Bellard argues the trial court erred when it the overruled his objections to the forensic interviewer's testimony under Rule 702 because: (1) she was not qualified to testify as an expert witness; and (2) improper bolstering. The State responds that the trial court had sufficient information to conclude the forensic interviewer had the requisite qualifications to testify as an expert.

During the trial, the trial court held a Rule 702 hearing outside the presence of the jury to determine whether the forensic interviewer could testify as an expert witness. The forensic interviewer testified that she has a degree in criminal justice and, prior to becoming a forensic interviewer worked as a private nanny for four and a half years. She stated that she had two years of experience working as a forensic interviewer at the Children's Advocacy Center of Plano, Texas, and had conducted approximately 513 forensic interviews. Her training included forty-eight hours of in-house training, a "three-block" training course hosted by the Children's Advocacy Centers of Texas in Austin, Texas, and ongoing monthly training. She stated that,

---

[5] *See supra* n.4

during the COVID pandemic, the training was virtual but in-person training had resumed. The training courses covered various topics, including forensic interviewing and techniques, victim dynamics, delayed outcries, "red flags," signs of coaching, the process of disclosure, early childhood development, crisis and de-escalation techniques for parents, sex trafficking investigations, and how to work with individuals who have different types of disabilities or developmental delay. Also, she stated that her team conducts weekly peer reviews of their interviews, quarterly regional peer reviews, and individual peer reviews with her direct supervisor.

Bellard objected on the basis that: (1) the forensic interviewer was not qualified; and (2) her testimony amounted to improper bolstering. The trial court expressly ruled that the forensic interviewer was qualified to testify as an expert, and it impliedly overruled Bellard's objection to improper bolstering.

First, we address Bellard's argument that the forensic interviewer was not qualified to testify as an expert. The record shows that the forensic interviewer's specialized knowledge was derived from her specialized education and training, and her practical experience. *See Rhomer*, 569 S.W.3d at 669. Also, the forensic interviewer's background was tailored to the area of expertise covered by her intended testimony, i.e., forensic interviews and how they are conducted, victim dynamics, the process of disclosure, how victims behave, and how victims understand time and dates. *See id.* Accordingly, we conclude the trial court did not

–18–

abuse its discretion when it ruled the forensic interviewer was qualified to testify as an expert.

Second, we address Bellard's argument that the trial court erred when it overruled his objection that the forensic interviewer's expert testimony would amount to improper bolstering. Specifically, he points to the forensic interviewer's testimony that there were no obvious signs of coaching or "red flags" and her opinion that S.R. was not exaggerating because she did not take any opportunity to add additional details or make up any other circumstances.

As we previously noted, while an expert's testimony that a child witness is truthful is inadmissible under Rule 702, an expert's opinion on signs of coaching or manipulation may assist the trier of fact and may therefore be admissible. *See Schutz*, 957 S.W.2d at 73. Again, without deciding whether bolstering remains a proper objection under the rules of evidence, we conclude the trial court's ruling was in the zone of reasonable disagreement.[6] We also note that Bellard did not object to these statements during the trial. *See* TEX. R. APP. P. 33.1.

The third part of issue two is decided against Bellard.

## IV. ADMISSION OF EVIDENCE

In issues three through five, Bellard argues the trial court erred when it overruled the following evidentiary objections: (1) his hearsay objection to the

---

[6] *See supra* n.4

–19–

SANE report; (3) his hearsay objection to the video recording of the forensic interview; and (4) his Rule 403 objection to the child victim's drawings because their probative value was substantially outweighed by the danger of unfair prejudice. The State responds that, even if the admission of this evidence were error, it was harmless error because the same evidence was admitted without objection.

### A. Applicable Law

The improper admission of evidence is non-constitutional error that an appellate court disregards unless the error affects an appellant's substantial rights. TEX. R. APP. P. 44.2(b); *Garcia v. State*, 126 S.W.3d 921, 927 (Tex. Crim. App. 2004). Under Rule 44.2, an appellate court may not reverse for non-constitutional error if, after examining the record as a whole, it has fair assurance that the error did not have a substantial and injurious effect or influence in determining the jury's verdict. TEX. R. APP. P. 44.2(b); *Garcia*, 126 S.W.3d at 927. The admission of evidence is harmless when the same evidence was offered and admitted elsewhere without objection. *See Cook v. State*, No. PD-0850-21, 2023 WL 152984, at *5 (Tex. Crim. App. Jan. 11, 2023); *Lane v. State*, 151 S.W.3d 188, 192–93 (Tex. Crim. App. 2004).

### B. Any Error was Harmless

Bellard contends that he was separately harmed by the admission of the SANE report, the video recording of the forensic interview, and S.R.'s drawings made during the forensic interview because each had the "cumulative effect" of bolstering

S.R.'s testimony. He concedes the evidence contained in the challenged exhibits was presented to the jury through S.R.'s testimony, arguing the evidence was admitted for the purpose of repeating S.R.'s statements to the jury. The record shows that S.R. testified without objection about the sexual assault. In addition, the jury heard the testimony of the SANE nurse and the forensic interviewer. And the forensic interviewer testified about S.R.'s drawings and what they depicted without objection.

After examining the record as a whole, we are assured that any error in the admission of the complained of evidence did not have a substantial and injurious effect or influence in determining the jury's verdict. *See* TEX. R. APP. P. 44.2(b); *Garcia*, 126 S.W.3d at 927. Accordingly, we conclude that even if the trial court erred when it admitted the complained of evidence, that error was not harmful error.

Issues three through five are decided against Bellard.

## V. CONCLUSION

The evidence is sufficient to support the trial court's judgment convicting Bellard of aggravated sexual assault of a child younger than fourteen years of age. The trial court did not err when it overruled Bellard's objections to the State's expert witnesses. Assuming without deciding that the trial court erred when it admitted the complained-of evidence, any error was harmless.

The trial court's judgment is affirmed.

/Emily Miskel/
EMILY MISKEL
JUSTICE

Do Not Publish
TEX. R. APP. P. 47

210633F.U05



## Court of Appeals
## Fifth District of Texas at Dallas
## JUDGMENT

HILLARY BELLARD, Appellant

No. 05-21-00633-CR      V.

THE STATE OF TEXAS, Appellee

On Appeal from the 366th Judicial District Court, Collin County, Texas
Trial Court Cause No. 366-81098-2021.
Opinion delivered by Justice Miskel. Justices Nowell and Smith participating.

Based on the Court's opinion of this date, the judgment of the trial court is **AFFIRMED**.

Judgment entered January 30, 2023